**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal No. 1:20-CR-00298 |
| | : | |
| v. | : | |
| | : | |
| DANIEL GUTMAN and BENJAMIN | : | |
| GUTMAN, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

**ORDER**

Before the court is a motion for sanctions filed by Defendants based on an

alleged violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. 77.) For the

reasons that follow, the court will deny the motion.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On November 18, 2020, a federal grand jury returned an indictment charging

Defendants with the following:

> Between in or about August of 2016 and in or about April of 2020, in
> the Middle District of Pennsylvania and elsewhere, the defendants,
> Daniel Gutman and Benjamin Gutman, did knowingly and willfully
> combine, conspire, and agree with one another, Dr. Yorlets, and others,
> both known and unknown to the Grand Jury, to defraud the United
> States Department of Agriculture and to commit any offense against the
> United States; to wit, False Statements, a violation of Title 18, United
> States Code, Section 1001, and Wire Fraud, a violation of Title 18,
> United States Code, Section 1343.

> The defendants conspired to defraud the United States Department of
> Agriculture and commit the crime of False Statements by submitting
> false International Certificates of Veterinary Inspection to a USDA
> Regional Endorsement Officer in Harrisburg, PA for endorsement. The
> International Certificates of Veterinary Inspection were false in that

they represented that each animal listed on the Certificate had been tested for bovine diseases when they had not.

The defendants also conspired to commit the crime of Wire Fraud and defraud the buyers of their cattle by falsely representing in International Certificates of Veterinary Inspection that all of the animals listed on the Certificates had been tested for bovine diseases when they had not.

(Doc. 1, pp. 6–7 (cleaned up).)[1]

Defendants pled guilty to these offenses on November 2, 2021.  (Docs. 47, 49.)  On May 13, 2022, Defendants filed the instant motion for sanctions accompanied by a supporting brief.  (Docs. 77, 78.)  The Government filed a brief in opposition on May 27, 2022.  (Doc. 80.)  Defendants timely filed a reply brief.  (Doc. 81.)  Thus, this motion is ripe for review.[2]

## DISCUSSION

Defendants move for sanctions based on allegedly late-disclosed *Brady* material.  Specifically, Defendants take issue with the Government's disclosure of four documents in March 2022 after they had already entered guilty pleas: (1) a Report of Interview at Doc. 78-4; (2) a second Report of Interview prepared in March 2021 at Doc. 78-5; (3) a Report of Interview that occurred in March 2021 at Doc. 78-6; and (4) an email in September 2021 at Doc. 78-7.  (Doc. 81, p. 4.)

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

[2] The court has scheduled an evidentiary hearing on July 18, 2022, in advance of sentencing, to establish the loss amount in this case.  (Docs. 74, 75.)

Defendants assert that if they had possessed these documents sooner, "they would have been in a far strong [sic] position during plea negotiations, and they might have obtained a far different presentence report." (Doc. 81, p. 8.) As recourse, Defendants seek either dismissal of this case with prejudice or suppression of evidence related to losses asserted by the main alleged victim of Defendants' crimes at sentencing. (Doc. 81, pp. 2, 8.)

It is well established "that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 87 (1963). "Impeachment evidence . . . as well as exculpatory evidence falls within the *Brady* rule." *United States v. Bagley*, 473 U.S. 667, 675 (1985) (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)). The obligation to disclose exculpatory and impeachment evidence exists even absent a request from the defendant. *United States v. Agurs*, 427 U.S. 97, 106–07 (1976).

"The Supreme Court has outlined a three-part test to determine if a *Brady* violation has occurred: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Lewis v. Horn*, 581 F.3d 92, 108 (3d Cir. 2009) (quoting *Banks v. Dretke*, 540 U.S. 668, 691 (2004)). The Supreme Court has further stated

that "implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 674–75 (1985) (quoting *Agurs*, 427 U.S. at 105).  In other words, evidence is material where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006) (quoting *Strickler v. Greene*, 527 U.S. 263, 280 (1999)).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Hinton v. Alabama*, 571 U.S. 263, 275 (2014).

The Third Circuit has clarified that:

> There can be no violation of *Brady* unless the government's nondisclosure infringes the defendant's fair trial right. [*United States v. Higgs*, 713 F.2d 39, 42, 43 (3d Cir. 1983)].  To constitute a *Brady* violation, the nondisclosure must do more than impede the defendant's ability to prepare for trial; it must adversely affect the court's ability to reach a just conclusion, to the prejudice of the defendant.  *United States v. Campagnuolo*, 592 F.2d 852, 861–62 (5th Cir. 1979).  "No denial of due process occurs if *Brady* material is disclosed in time for its effective use at trial."  *Higgs*, 713 F.2d at 44; *see also Kaplan*, 554 F.2d at 580.

*United States v. Starusko*, 729 F.2d 256, 262 (3d Cir. 1984).

In this case, the court finds that no *Brady* violation has occurred.  Initially, the court notes that Defendants do not seek to set aside their plea agreements. Thus, it appears that Defendants do not believe that the alleged *Brady* material would have influenced their decision to plead guilty to the offenses charged, and

4

by extension, that this evidence was not material to Defendants' guilt.  Instead, Defendants focus on the timing of the Government's disclosure, the loss amount in this case, and their punishments—issues which were explicitly reserved by agreement in Defendants' pleas.  (*See* Docs. 37, 39.)

On this score, the court has not yet made a determination regarding the loss amount or the appropriate sentences to impose.  Therefore, the court cannot determine whether the outcome of these decisions would have been different if the Government had disclosed the alleged *Brady* documents sooner.  Defendants have not asserted that they will be unable to use the allegedly favorable material during the evidentiary hearing to determine the loss amount or at their sentencings in this case.  Moreover, Defendants have not requested a continuance of either proceeding to have more time to review the documents disclosed by the Government. Defendants will be free to argue the weight that should be attributed to these documents, and more broadly whether the court should credit the loss amounts proposed by the Government.  Therefore, it does not appear that the timing of the Government's disclosures will affect Defendants' ability to prepare for the remaining matters in their cases.  To the contrary, it appears that the Government disclosed this material well in advance of the evidentiary hearing and Defendants' sentencing hearings.

Because the court finds that Defendants have failed to establish prejudice, and therefore have failed to establish a *Brady* violation, the court finds that sanctions are inappropriate in this case.[3]

### CONCLUSION

For the foregoing reasons, **IT IS ORDERED THAT** Defendants' motion for sanctions, Doc. 77, is **DENIED**.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: June 21, 2022

---

[3] To the extent that Defendants rely on Magistrate Judge Carlson's order entered on November 30, 2020, Doc. 16, as the source of any additional substantive rights in this case, this reliance is misplaced. Indeed, Judge Carlson's order explicitly states that it merely "confirms the disclosure obligation of the prosecution under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny," rather than creating any new obligations for the Government. (Doc. 16.)