## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

DANIEL GUTMAN and
BENJAMIN GUTMAN,

Defendants.

Case No. 1:20-cr-00298

(Judge Wilson)

(Electronically Filed)

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR

## RECONSIDERATION

James M. Trusty
A. Jeff Ifrah
IFRAH LAW
1717 Pennsylvania Ave. NW
Suite 650
Washington, D.C. 20006
(202) 524-4140
(202) 524-4141 (fax)
jtrusty@ifrahlaw.com
*Counsel for Defendant Benjamin Gutman*

Stephen A. Miller
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-4736
(215) 253-6796 (fax)
samiller@cozen.com
*Counsel for Defendant Daniel Gutman*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

I.       PROCEDURAL HISTORY ................................................................................ 1

II.      STATEMENT OF FACTS ................................................................................. 2

III.     STANDARD OF REVIEW ................................................................................ 6

IV.      QUESTIONS PRESENTED ............................................................................... 6

         A.       Does the District Court Have Jurisdiction To Review The Merits Of
                  Defendants' Motion For Reconsideration Given That The Defendants
                  Filed A Notice of Appeal? ................................................................... 6

         B.       Has There Been An Error of Law or a Substantial Change In Controlling
                  Law or Fact, That Would Warrant This Court's Reconsideration Of The
                  Defendants' Motion For Correction of Sentence? ................................ 7

V.       ARGUMENT ..................................................................................................... 7

         A.       This Court Has Jurisdiction to Consider Defendants' Motion for
                  Reconsideration Pursuant to Federal Rule of Criminal Procedure 37(a).... 7

         B.       The Court's Narrow Interpretation of the Third Circuit's Decision in
                  *United States v. Banks* Must be Reconsidered In Order to Prevent Manifest
                  Injustice ............................................................................................... 9

VI.      CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Above the Belt, Inc., v. Mel Bohannon Roofing, Inc.*,
99 F.R.D. 99 (E.D. Va. 1983) ................................................... 6

*Auer v. Robbins*,
519 U.S. 452 (1997) ................................................................. 10

*United States v. Banks*,
2022 WL 17333797 (3d Cir. Nov. 30, 2022) ........................... 5,9,10,11,12,13,14,15

*Gillespie v. Dring*,
2021 WL 3290690 (M.D. Pa. Aug. 21, 2021) ........................... 7

*Harsco Corp. v. Zlotnicki*,
779 F.2d 906 (3d Cir. 1985) ...................................................... 6

*Kisor v. Wilkie*,
139 S. Ct. 2400 (2019) .............................................................. 10

*Legrand v. Fenstermaker*,
2012 WL 2115489 (M.D. Pa. June 11, 2012) ........................... 6

*Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros.*,
176 F.3d 669 (3d Cir. 1999) ...................................................... 6

*Molina-Martinez v. United States*,
578 U.S. 189 (2016) .................................................................. 11

*North River Insurance Co. v. CIGNA Reinsurance Co.*,
52 F.3d 1194 (3d Cir. 1995) ...................................................... 6

*United States v. Abouammo*,
2022 WL 17734424 (N.D. Cal. Dec. 16, 2022) ......................... 12

*United States v. Howell*,
2022 WL 2052650 (E.D. Pa. June 7, 2022) ............................... 8

*United States v. Lynch*,
2017 WL 406673 (W.D. Pa. Jan. 27, 2017) ............................... 8

*United States v. Maldonado*,
2022 WL 685539 (E.D. Pa. Mar. 8, 2022) ................................. 7

*United States v. McKinney*,
2022 WL 17547467 (E.D. Mich. Dec. 9, 2022) ......................... 11, 12, 13

*United States v. Murietta*,
2021 WL 322181 (W.D. Pa. Feb. 1, 2021) ................................. 7, 8

*United States v. Pawlowski*,
967 F.3d 327 (3d Cir. 2020) ...................................................... 7

*United States v. Thomason*,
   940 F.3d 1166 (11th Cir. 2019) ................................................................................. 16

**Statutes**

18 U.S.C. § 371 ................................................................................................................ 1

U.S.S.G. § 2B1.1(a)(2) ................................................................................................... 3

**Other**

F.R.C.P. 35(a) ............................................................................................................. 1, 14

F.R.C.P. 37(a) .......................................................................................................... 7,8,9,15

F.R.C.P. 62.1 ................................................................................................................... 7

## **INTRODUCTION**

Defendants Daniel Gutman and Benjamin Gutman, by and through undersigned counsel, respectfully move this Court to reconsider the Order entered December 1, 2022, ECF 116, denying Defendants' Motion to Correct the Sentence under Rule 35(a) of the Federal Rules of Criminal Procedure.

## I.     **PROCEDURAL HISTORY**

On November 18, 2020, the United States Government indicted Defendants Daniel Gutman and Benjamin Gutman (collectively "Defendants") on charges related to the submission of false International Certificates of Veterinary Inspection to the U.S. Department of Agriculture.  ECF 1.  On November 2, 2021, pursuant to plea agreements with the Government, Defendants each pleaded guilty to one count of conspiracy to defraud the United States pursuant to 18 U.S.C. § 371.  *See* ECF 37, 39, 47, 48.  The plea agreements did not resolve the matter of sentencing, ECF 37, 39, which the parties subsequently briefed before the Court, *e.g.*, ECF 85-86, 89, 95, 105.  On November 17, 2022, following a hearing, the Court issued its Judgment as to Defendants, sentencing each to 30 months of imprisonment, assessing fines of $250,000, and imposing two years of post-release supervision.  ECF 109, 110.

On November 30, 2022, Defendants timely filed a motion to correct their sentences pursuant to Rule 35 of the Federal Rules of Criminal Procedure.  ECF 115.  The Court denied Defendants' motion the following day.  ECF 116.  On December

7 and 12, 2022, respectively, Defendants filed Notice of Appeal with respect to the Court's Order.  ECF 117, 118.  Then, on December 13, 2022, Defendants timely filed a motion for reconsideration of the Court's Order.  ECF 119.  The Court subsequently ordered Defendants to file a brief in support of the motion for reconsideration pursuant to Local Rules 1.1 and 7.10, additionally directing Defendants to address "whether, following Defendants filing notices of appeal, this court has jurisdiction to resolve their pending motion."  ECF 120.

## II.    STATEMENT OF FACTS

Prior to the instant proceedings, the Defendants owned and operated a livestock exporting business in Maryland and Pennsylvania, known as Gutman Brothers, LTD. ECF 1.  From 2016 to 2020 the Defendants participated in a scheme through which they, and other individuals in the livestock industry, provided false statements to the U.S.D.A. ECF 116 at 2. The statements pertained to matters such as disease testing and documentation related to the shipment of cattle across state lines and internationally. ECF 1, 89. Despite this behavior, there is no evidence that the Defendants' cattle were ever shipped while infected with bovine-related diseases such as brucellosis, tuberculosis, leucosis, or bovine diarrhea. ECF 85 at 6.

In November 2020, the Defendants were indicted for various offenses including conspiracy to defraud the United States and commit offenses against the United States, making false statements, and wire fraud. ECF 1. Accepting

responsibility for their actions, the Defendants pled guilty to one count of conspiracy to defraud the United States and commit offenses against the United States on November 2, 2021. ECF 47, 49.  The Defendants' plea agreement left open the issue of sentencing. *See* ECF 37, 39.

Probation prepared a Presentence Investigation Report ("PSR"), which recommended a period of imprisonment ranging from 108 to 135 months for each Defendant.[1] ECF 67 at 27. This recommendation represented an upward adjustment of 24 levels from the base offense level of 6 pursuant to U.S.S.G. § 2B1.1(a)(2). *Id.* at 19-20. Most of this significant upward adjustment—18 levels—was premised on a finding that the estimated loss resulting from the Defendants' offenses was between $3,500,000 and $9,500,000. *Id.* at 18, 20. Defendants objected to this inflated calculation in several ways.  First, Defendants argued that the Government had failed to prove any amount of actual loss.  *E.g.*, ECF 85 at 4-28.  In particular, Defendants asserted a lack of evidence of any positive cases of diseased cattle being shipped by Defendants and argued that the Government had not otherwise proven any harm on the part of Defendants' customers or anyone else.  *Id.*  Second, Defendants asserted that the Government had not presented any evidence of intended loss. *Id.* at 28-30.  Third, Defendants challenged the relevance of Application Note

---

[1] However, due to the statutory maximum penalty, the guideline sentence was capped at 60 months. *See*, *e.g.*, ECF 67 at 27.

3(F)(v), arguing that courts considering similar cases have not applied that Note and that the Application Note is generally an unreasonable interpretation of § 2B1.1. *Id.* at 30-47. Following extensive briefing by the parties, and a full-day evidentiary hearing, the Court sentenced each Defendant to 30 months of imprisonment. ECF 109, 110.

In imposing this sentence, the Court relied on Application Note 3(F)(v) to U.S.S.G. § 2B1.1 to calculate loss. *See* ECF 116 at 4. This section of the Guidelines' Commentary counts as loss the value of goods involved in certain misconduct, without requiring any evidence of a relationship between that value and actual loss. Accordingly, although the Court concluded that the Government failed to meet its burden in proving *actual* loss, it found $7,484,579 of loss under Application Note 3(F)(v). ECF 115 at 2. This resulted in Guideline Ranges of 87 to 108 months of incarceration, capped by statute at 60 months. ECF 116 at 4. The Court imposed a downward variance, citing factors such as "Employment Record," "Family Ties and Responsibilities," "Charitable Service/Good Works," and "Non-violent Offender" status. ECF 109 at 2.

The Court's reliance on the Guidelines' Commentary had a substantial impact on Defendants' sentences. Absent the 18-level increase for loss calculated under Application Note 3(F)(v), Defendants' Guidelines Ranges would have been 8 to 14

months. Instead, utilizing Application Note 3(F)(v), Defendants' sentences required 30 months imprisonment – even with the Court's downward variance.

On November 30, 2022, fourteen days after the Court sentenced Defendants, the Third Circuit published an opinion in *United States v. Banks*, ___4th ___, 2022 WL 17333797, at *1 (3d Cir. Nov. 30, 2022). Therein, the Third Circuit clarified the way in which courts must apply Section 2B1.1 of the U.S. Sentencing Guidelines, instructing that the word "loss" as used in the Guidelines, refers *only* to actual loss, and not intended loss. *Id.* at 7. (emphasis added). The court concluded that because the Commentary impermissibly expanded the meaning of "loss" to include intended loss, it should be accorded "no weight" in sentencing calculations. *Id.*

Given this instructive and immediately applicable decision, Defendants promptly filed a Motion for Correction of Sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure. ECF 115. Defendants argued that the court's reasoning in *Banks* must also apply to Application Note 3(F)(v), which was used by this Court to calculate Defendants' Guidelines Range. *Id.* at 4. The following day, the Court denied Defendants' Motion. ECF 116. Thereafter, the Defendants appealed the Court's denial of their Rule 35 Motion to the Third Circuit. ECF 117, 118. The instant Motion for Reconsideration followed. ECF 119.

## III.   STANDARD OF REVIEW

The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered its judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Café ex. Rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). Simply put, a motion for reconsideration should be granted when "the court has misunderstood a party or where there has been a significant change in law or facts since the court originally ruled on the issue." *Legrand v. Fenstermaker*, 2012 WL 2115489, at *1 (M.D. Pa. June 11, 2012) (citing *Above the Belt, Inc., v. Mel Bohannon Roofing, Inc.*, 99 F.R.D. 99, 1010 (E.D. Va. 1983)).

## IV.   QUESTIONS PRESENTED

### a.   Does the District Court Have Jurisdiction to Review the Merits of Defendants' Motion for Reconsideration Given That the Defendants Filed a Notice Of Appeal?

**Suggested Answer:** Yes.

      **b.**      **Has There Been an Error of Law or a Substantial Change in Controlling Law or Fact, That Would Warrant This Court's Reconsideration of the Defendants' Motion for Correction of Sentence?**

**Suggested Answer:** Yes.

## V.    ARGUMENT

      **a.**      **This Court Has Jurisdiction to Consider Defendants' Motion for Reconsideration Pursuant to Federal Rule of Criminal Procedure 37(a).**

Although the filing of a notice of appeal is an act of jurisdictional significance, Federal Rule of Criminal Procedure 37(a) permits the court to review the merits of a timely filed motion, even *after* a notice of appeal has been filed.[2] *United States v. Pawlowski*, 967 F.3d 327, 329 n.4 (3d Cir. 2020). The Rule provides the court with three options when confronted with a timely motion for which an appeal has been docketed and is pending. *United States v. Murietta*, 2021 WL 322181, at \*1 (W.D. Pa. Feb. 1, 2021) (citing Fed. R. Crim. P. 37(a)); *see also United States v. Maldonado*, 2022 WL 685539, at \*1 n.1 (E.D. Pa. Mar. 8, 2022) (holding that under Federal Rule of Criminal Procedure 37(a) the district court has a "few options,"

---

[2] The Rule's civil equivalent, Federal Rule of Civil Procedure 62.1 also serves as a "procedural device that permits the District Court to issue an 'indicative' decision on a motion for relief, notwithstanding a pending appeal." *Gillespie v. Dring*, 2021 WL 3290690, at \*1 (M.D. Pa. Aug. 21, 2021) (internal quotation marks omitted) (quoting *Mandalapu v. Temple Univ. Hosp., Inc.*, 796 Fed. Appx. 152, 153 n.2 (3d Cir. 2020)). Courts have utilized Rule 62.1 to "advance the litigation" pending appeal. *Id.* at \*2 n.6.

under which it may consider a defendant's timely motion, even when an appeal is pending); *United States v. Lynch*, 2017 WL 406673, at *1 n.1 (W.D. Pa. Jan. 27, 2017) (citing Fed. R. Crim. P. 37(a)) ("Although [defendant] has filed an appeal to the United States Court of Appeals for the Third Circuit . . . this Court has discretion to hear this timely Rule 35 Motion."). In such a scenario, the court may (1) defer considering the motion; (2) deny the motion; or (3) state that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue. *Murietta*, 2021 WL 322181, at *1. Thus, pursuant to Federal Rule of Criminal Procedure 37(a), this Court maintains jurisdiction to consider the merits of Defendants' Motion for Reconsideration, despite the appeal pending in the Third Circuit. *United States v. Howell*, 2022 WL 2052650, at *2 (E.D. Pa. June 7, 2022).

The instant case is distinguishable from those in which the court found that denial under Rule 37(a) was appropriate. For example, in *Murietta*, the court "elect[ed] option two" and denied the defendant's motion for reconsideration. 2021 WL 322181, at *1. In that case, the court concluded that defendant "made no showing in her [m]otion that reconsideration [was] warranted," given that she failed to "point to any intervening change in controlling legal authority," and merely "repeat[ed] arguments that she previously made[.]" *Id.* Similarly, in *Lynch*, the court denied the defendant's motion for correction of sentence, finding that the defendant

failed to identify a "clear error" in his sentence, and instead simply sought to reassert the arguments previously made during sentencing. 2017 WL 406673, at *2.

By contrast, in this case, several significant changes in legal authority warrant reconsideration, as discussed in detail below. Given these circumstances, the Court should issue an indicative ruling establishing that it would grant Defendants' Motion for Reconsideration upon remand from the Court of Appeals and/or that the Defendants' Motion raises a substantial question. The Court retains jurisdiction to issue such a ruling under Federal Rule of Criminal Procedure 37(a).

### b. The Court's Narrow Interpretation of the Third Circuit's Decision in *United States v. Banks* Must be Reconsidered In Order to Prevent Manifest Injustice.

As noted above, this is not an instance in which Defendants have filed a motion for reconsideration to merely "to restate – verbatim – stale arguments upon which the court has already ruled." *Walsh v. Krantz*, 2009 10677834, at *1 n.1 (M.D. Pa. Mar. 2, 2009). To the contrary, Defendants seek reconsideration given recent developments in the legal community's understanding, analysis, and application of the Third Circuit's decision in *United States v. Banks*, 2022 WL 17333797, at *1 (3d Cir. Nov. 30, 2022). Given the recency of the *Banks* opinion, these legal developments were not available to Defendants when their Motion was filed. This newly available information dictates only one conclusion: The Court's narrow

interpretation and application of the *Banks* decision was a clear error of law that must be corrected to prevent manifest injustice.

In its order denying Defendants' Rule 35 Motion, this Court opined that the holding in *Banks* did not warrant correction of Defendants' sentences because "the [Court's] determination of the loss amount relied on Application Note 3(F)(v) rather than Application Note 3(A)." ECF 116 at 5. In other words, this Court concluded that the *Banks* Court's decision to "accord the commentary no weight" applied *only* to Application Note 3(A). *Banks* cannot be read so narrowly.

As an initial matter, nothing in the language of the *Banks* decision indicates an intent by the Third Circuit to limit its ruling solely to one subsection of the commentary. To the contrary, the Court stated more broadly that its "reprised standard" for deference under *Auer v. Robbins*, 519 U.S. 452 (1997), in accordance with *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), "applied to the Sentencing Commission's interpretive commentary." *Banks*, 2022 WL 17333797, at *6. Although the Court stated that this "framework applie[d] to Banks's challenge to § 2B1.1's intended loss-enhancement," nothing in its decision suggested that the framework's application should be limited to *only* to that section. *Id.* Given these circumstances, the most logical reading of *Banks* requires courts to refrain from "reflexively defer[ring]" to the Sentencing Commission's commentary in general— regardless of the section in which the commentary is provided. *Id.*

Even if *Banks* were intended to apply only to commentary directly applicable to §2B1.1, it would still require correction of Defendants' sentences. Section 3(F)(v) of the Commentary is part of the *same* Application Note as § 3(A); both sections equally apply to the "determination of loss under subsection (b)(1)." Accordingly, under this Court's reasoning, *Banks* would apply only to a subsection of a subsection of the Commentary, rather than the Practice Note as a whole. Such a narrow and inconsistent application would undermine the Guidelines' purpose of achieving "uniformity and proportionality" in sentencing. *Molina-Martinez v. United States*, 578 U.S. 189, 193 (2016).

Further, the logic of the *Banks* opinion seemingly applies with even greater force to Application Note § 3(F)(v), which provides:

> In a case involving a scheme in which (I) services were fraudulently rendered to the victim by persons falsely posing as licensed professionals; (II) goods were falsely represented as approved by a governmental regulatory agency; or (III) goods for which regulatory approval by a government agency was required but not obtained, or was obtained by fraud, loss shall include the amount paid for the property, services or goods transferred, rendered, or misrepresented, with no credit provided for the value of those items or services.

If "loss" excludes "intended loss," as *Banks* confirms, then "loss" must also exclude other calculations that are explicitly distinct from value conferred on or denied to the victim. That is the antithesis of loss.

Recent case law supports Defendants' interpretation and application of the *Banks* decision. For example, in *United States v. McKinney*, the Eastern District of

Michigan considered a criminal defendant's argument that § 2B1.1 concerns only actual loss. 2022 WL 17547467, at *4-9 (E.D. Mich. Dec. 9, 2022). The court sided with the defendant. *Id.* Analyzing *Banks*, the court quoted the Third Circuit's observation that the Guideline itself "does not mention 'actual' versus 'intended' loss; that distinction appears only in the commentary. That absence alone indicates that the Guideline does not include intended loss." *Id.* at *7 (quoting *Banks*, 2022 WL 17333797 at *3). The court further cited the Third Circuit's conclusion that "in the context of a sentence enhancement for basic economic offenses, the ordinary meaning of the word 'loss' is the loss the victim actually suffered." *Id.* Agreeing with *Banks*, the Eastern District of Michigan determined that no dictionary definition of the word "loss" "include[s] a loss that has not occurred." *Id.*; *see also id.* ("Nothing in § 2B1.1(b)(1)'s table or in the plain language of the guideline indicates that individuals should be penalized for potential harm that has not occurred.").[3]

Both *McKinney* and *Banks* rely on the conclusion that the Guideline in § 2B1.1 relates only to actual loss. While those cases relate specifically to whether the Guideline might also account for intended loss—and both conclude that it does not—

---

[3] A recent case in the U.S. District Court for the Northern District of California declined to interpret § 2B1.1 in the same manner as *Banks* and *McKinney*. *United States v. Abouammo* 2022 WL 17734424, at *2 (N.D. Cal. Dec. 16, 2022). However, beyond the fact that *Banks* is binding Third Circuit precedent, the California case relied on a distinguishable analytical framework, as the *Abouammo* Court explicitly acknowledged. Accordingly, the court's ruling in *Abouammo* is not dispositive as to this Court's application of *Banks*.

they also support the conclusion that other forms of unrealized or theoretical loss do not factor into the analysis required under § 2B1.1. Application Note 3(F)(v) plainly calls for courts to add to actual loss—the only type of loss to be considered under § 2B1.1—other amounts unrelated to loss that actually occurred in a given case (*i.e.*, "the amount paid for the property, services or goods" involved in certain cases). Distinguishing the present case from either *Banks* or *McKinney* would require the Court to rule on the technical boundaries of the *Banks* decision, without considering how that decision affects this closely analogous context.

In addition, in the limited time since the Third Circuit issued the *Banks* decision, numerous legal scholars and analysts have addressed the scope of the *Banks* decision. Indeed, the general consensus indicates that *Banks* will have major implications for the way in which courts "treat *all* of the Sentencing Commission's commentary going forward[.]"[4] (emphasis added). For example, one commentator remarked that the *Banks* decision is unsurprising in light of the judicial system's "unease with how guidelines commentary notes have been used to expand guideline provisions without congressional approval."[5] And Professor Douglas A. Berman, a

---

[4] Andrew Boutros et al., *Third Circuit Rejects Use of "Intended Loss" as Enhancement Under U.S. Sentencing Guidelines*, JDSUPRA (Dec. 2, 2022), https://www.jdsupra.com/legalnews/third-circuit-rejects-use-of-intended-2405215/.
[5] Bill Mateja et al., *'Loss' Definition Is A Win For White Collar Defendants* (Dec. 5, 2022), https://www.sheppardmullin.com/media/publication/2023_Law360%20-%203rd%20Circ.%20_Loss_%20Definition%20Is%20A%20Win%20For%20White%20Collar%20Defendants.pdf.

federal sentencing expert at the Ohio State University Moritz College of Law, published commentary on the *Banks* decision, calling the decision "yet another case involving another circuit finding notable guideline commentary problematic and inapplicable."[6] In sum, recent legal scholarship emphasizes that the *Banks* decision has meaningful implications for federal courts' reliance upon the Federal Sentencing Guidelines' Commentary.

Rather than adopting this Court's narrow interpretation, recent legal scholarship has suggested an even broader application of the *Banks* holding. Yet, the Court need not go so far as to reject the Commentary in its entirety as contemplated by the above-cited scholarship. *Banks* merely requires that the Court refrain from deferring to the Commentary's unnecessary expansion of the definition of "loss" as applied to sentences imposed under §2B1.1.

At the time of filing the Rule 35(a) Motion, these significant interpretations of the law had not yet been published. The deadline for Defendants' Motion fell on the same day that the *Banks* decision was published by the Third Circuit. Thus, at the time Defendants filed their Motion, other courts, commentators, and litigants had

---

[6] Douglas A. Berman, *Third Circuit panel rules federal fraud guideline enhancements for "loss" do not properly include "intended loss"*, SENTENCING LAW AND POLICY (Nov. 30, 2022), https://sentencing.typepad.com/sentencing_law_and_policy/2022/11/third-circuit-panel-rules-federal-fraud-guideline-enhancements-for-loss-do-not-properly-include-inte.html.

not yet had the opportunity to provide analysis of the *Banks* decision and its implications. Since that time, both courts and numerous legal commentators have provided substantive analysis of the *Banks* opinion and its implications on federal sentencing practices, and it is likely that additional interpretations of the decision will emerge in the coming days and weeks. Accordingly, in light of these recent developments, reconsideration of Defendants' Motion for Correction of Sentence is proper.

## VI.    CONCLUSION

This Court has jurisdiction to review Defendants' Motion for Reconsideration on the merits, pursuant to Rule 37(a) of the Federal Rules of Criminal Procedure. Defendants respectfully request that Court the issue an indicative ruling indicating that if the Appeals Court were to remand, it would grant Defendants' Motion or that Defendants' Motion raises a substantial question. Such a ruling is warranted given the significant developments in legal authority that have emerged since this Court's initial ruling on Defendants' Motion to Correct the Sentences. These developments indicate that the Court's narrow application of *Banks* was an error of law that must be corrected to prevent manifest injustice. In accordance with the Third Circuit's ruling in *Banks*, this Court should calculate Defendants' sentences based solely on

actual loss, which this Court has already determined to be zero. Given this

calculation, Defendants' Guideline range should be 8 to 14 months of incarceration.[7]

Dated: December 22, 2022                    Respectfully Submitted,


                                            */s/ James M. Trusty*
                                            James M. Trusty
                                            A. Jeff Ifrah
                                            **IFRAH LAW**
                                            1717 Pennsylvania Ave. NW
                                            Suite 650
                                            Washington, D.C. 20006
                                            (202) 524-4140
                                            (202) 524-4141 (fax)
                                            jtrusty@ifrahlaw.com
                                            *Counsel for Defendant Benjamin Gutman*

                                            */s/ Stephen A. Miller*
                                            Stephen A. Miller
                                            COZEN O'CONNOR
                                            One Liberty Place
                                            1650 Market Street, Suite 2800
                                            Philadelphia, PA 19103
                                            (215) 665-4736
                                            (215) 253-6796 (fax)

---

[7] Defendants have reason to believe that if this Court were to correct their sentences pursuant to the Third Circuit's holding *Banks*, the Government would seek an upward adjustment in the imposition of those sentences. An upward adjustment is unwarranted. As an initial matter, any upward adjustment would be arbitrary, given that this Court previously identified several factors warranting a downward variance. This Court's reliance on *Banks* would not change the circumstances which led this Court to conclude that a 50 percent variance was appropriate. Further, if this Court were to resentence Defendants in accordance with the Government's request for an upward adjustment, a new sentencing hearing would be required. *See United States v. Thomason*, 940 F.3d 1166, 1172 (11th Cir. 2019) (holding that a resentencing hearing may be necessary when the court imposes a "more onerous" sentence).

samiller@cozen.com
*Counsel for Defendant Daniel Gutman*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8</u>

Pursuant to Local Rule 7.8, I certify that this brief, excluding the cover

page, table of contents and authorities, signature block, and certificates contains

3,715 words.

<u>*/s/ James M. Trusty*</u>
James M. Trusty
A. Jeff Ifrah
IFRAH LAW
1717 Pennsylvania Ave. NW
Suite 650
Washington, D.C. 20006
(202) 524-4140
(202) 524-4141 (fax)
jtrusty@ifrahlaw.com
*Counsel for Defendant Benjamin Gutman*

18

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 22, 2022, I served the foregoing Brief in Support of Defendants' Motion for Reconsideration by electronic service on counsel of record via the Court's electronic filing system.

Dated: December 22, 2022                    Respectfully submitted,

*/s/ James M. Trusty*
James M. Trusty
A. Jeff Ifrah
IFRAH LAW
1717 Pennsylvania Ave. NW
Suite 650
Washington, D.C. 20006
(202) 524-4140
(202) 524-4141 (fax)
jtrusty@ifrahlaw.com
*Counsel for Defendant Benjamin Gutman*

19